482752

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| IN THE MATTER OF: | CASE NO:   **23-03241-ESL7** |
| **RIC F MALIK,** | CHAPTER:   **7** |
| **Debtor** | |

NewRez LLC dba Shellpoint Mortgage Servicing
as servicer for MCLP Asset Company Inc.,
Movant,

RIC F MALIK,
KAREN S MALIK,
Debtors-Respondents,

Wigberto Lugo Mender,
Trustee

### MOTION FOR RELIEF FROM STAY PURSUANT TO 11 U.S.C. 362

TO THE HONORABLE COURT:

COMES NOW Movant, NewRez LLC dba Shellpoint Mortgage Servicing as servicer for MCLP Asset Company Inc.[1], (hereinafter referred to as "Movant"), through the undersigned attorney, and very respectfully alleges and requests:

1.     RIC F MALIK hereinafter will be referred to as "the Debtor". KAREN S MALIK is named as co-debtor or co-guarantor and/or co-owner of the property.

---

[1] NewRez LLC dba Shellpoint Mortgage Servicing services the underlying mortgage loan and note for the property referenced in this motion for (Movant). In the event the automatic stay in this case is modified, this case dismisses, and/or the Debtor obtains a discharge and a foreclosure action is commenced on the mortgaged property, the foreclosure will be conducted in the name of Movant. Movant, directly or through an agent, has possession of the Note. The Note is endorsed in blank. Movant is the beneficiary or the assignee of the Deed of Trust.

Case No. 23-03241-ESL7
*Motion for Relief from Stay*

---

2.      Movant, a secured creditor in the above captioned case, has not been offered nor
provided adequate protection as required by section 362 of the Bankruptcy Code.
Consequently, it moves to request that the automatic stay be lifted in order to continue with
the mortgage foreclosure proceedings.

3.      The pertinent part of section 362 states that:

(d) On request of a party in interest and after notice and hearing, the court
shall grant relief from stay provided under subsection (a) of this section,
such as by terminating, annulling, modifying, or conditioning such stay-

(1)     For cause, including the lack of adequate protection of an
interest in property of such party in interest

(2)     With respect to a stay of an act against property under
subsection(a) of this section, if---

A)     The debtor does not have an equity in such property;
and

B)     Such property is not necessary to an effective
reorganization.

4.      Movant is the holder in due course of a mortgage note in the principal sum of
**$272,000.00** bearing interest at **5.000%** per annum (the "Note"). The indebtedness evidenced
by the Note is secured by a mortgage executed on **November 13, 2002** (the "Mortgage").
Attached hereto as **Exhibit I** is a copy of the Note, as **Exhibit II** a copy of the Mortgage Deed,
and as **Exhibit III** evidence of Movant's secured status.

5.      The Mortgage encumbers the property described in (hereinafter the "Property")
as follows: 327 DELAWARE AVENUE, DELANCO TOWNSHIP, NJ 08075.

6.      The Debtor has not made the monthly installments due under the terms of the Note
and the Mortgage.

7.    As of April 2, 2024, the total amount of arrears due to Movant is **$50,223.33**. Refer to **Exhibit IV** attached hereto, which includes an itemized statement of the arrearage.

8.    As of April 2, 2024, the principal balance owed is in the amount of $167,691.15.

9.    An additional amount of $1,249.00 in attorney fees and costs will accrue as a result of the filing of this Motion and the prosecution of the relief requested herein.

10.    The Debtor's failure to make payments due under the Mortgage, results in the Debtor's material default with the terms of the Note and the Mortgage.

11.    Movant has not been offered and does not have adequate protection for the above-mentioned security interest, the Debtor has failed to make post-petition payments as called for under the terms of the Note.

12.    In the statement of intention, the Debtor proposes to surrender the property. [Refer to Docket Number 1, p. 43].

13.    Movant has not been offered and does not have adequate protection for the above-mentioned security interest.  Moreover, the Debtor has failed to make post-petition payments as called for under the terms of the Note and the Mortgage.  Therefore, "cause" exists to lift the automatic stay.

14.    Consequently, Movant respectfully requests for the entry of an order:

   a.   Granting Relief from Stay in favor of Movant.

   b.   Waiving the stay of order provided under Rule 4001(a)(3) of the Federal Rules of Bankruptcy Procedure.

Case No. 23-03241-ESL7
*Motion for Relief from Stay*

15. In view of the foregoing, Movant respectfully requests that an order lifting the automatic stay pursuant to sections 362(d)(1) of the Bankruptcy Code be entered, enabling Movant to resume normal servicing of the loan, which may include collections, loss mitigation, and foreclosure activities. Upon stay being lifted in favor of Movant, Movant may exercise all rights and remedies with respect to the mortgage loan as well as to the property pursuant to the terms of the note, security instrument, and applicable bankruptcy and non-bankruptcy law.

16. Attached hereto as **Exhibit V** is the non-military service affidavit required for the entry of an order by default by the Servicemembers' Civil Relief Act, 50 USC Appx. §521.

### NOTICE TO ALL PARTIES IN INTEREST

Within fourteen (14) days after service as evidenced by the certification, and an additional three (3) days pursuant to Fed. R. Bank. P. 9006(f) if you were served by mail, any party against whom this paper has been served, or any other party to the action who objects to the relief sought herein, shall serve and file an objection or other appropriate response to this paper with the Clerk's office of the U.S. Bankruptcy Court for the District of Puerto Rico. If no objection or other response is filed within the time allowed herein, the paper will be deemed unopposed and may be granted unless: (i) the requested relief is forbidden by law; (ii) the requested relief is against public policy; or (iii) in the opinion of the Court, the interest of justice requires otherwise. If no response is filed within the prescribed period of time the Court may enter an order granting the relief herein requested.

**WHEREFORE**, respectfully requests that an order be entered granting the relief from the automatic stay pursuant to section 362 (d)(1) of the Bankruptcy Code, granting costs, expenses and attorney's fees to Movant and authorizing Movant to proceed with the foreclosure of the Mortgage against the Property and or normal servicing of the loan, with such further relief as may be deemed just and proper. Movant further requests that the stay of order provided under Rule 4001(a)(3) be deemed waived if the relief herein requested is granted.

**RESPECTFULLY SUBMITTED.**

**Case No. 23-03241-ESL7**
*Motion for Relief from Stay*

---

In San Juan, Puerto Rico, this 19 day of April 2024.

**MARTINEZ & TORRES LAW OFFICES, P.S.C.**
P.O. Box 192938 San Juan, PR 00919-2938
Tel. (787) 767-8244 & Fax (787) 767-1183

***/s/ Sarah M. Vega Bonilla***
By: Sarah M. Vega Bonilla
USDC-PR 303503
Email: svega@martineztorreslaw.com

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that on this date, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following: the Trustee Wigberto Lugo Mender and to debtor's attorney, Frederick Chardon Dubos. I also hereby certify that a copy of the instant motion was also caused to be served by certified mail and/or regular mail (postage prepaid) to the:

(1) **Chapter 7 Trustee Wigberto Lugo Mender, Esq. @ Wigberto Lugo Mender, Cpa, CENTRO INTERNACIONAL DE MERCADEO, 100 CARR 165 SUITE 501, GUAYNABO, PR 00968-8052;**

(2) **to Debtor's counsel, Frederic Chardon Dubos, Esq. @ Frederic Chardon Dubos Law Office, PO BOX 1797, Carolina, PR 00984-1797;**

(3) **to the Debtor RIC F MALIK @ PO BOX 756, VIEQUES, PR 00765-0756; and,**

(4) **and to the Debtor RIC F MALIK and non-filing co-debtor KAREN S MALIK @ 327 Delaware Avenue, Delanco, NJ 08075-4315.**

**MARTINEZ & TORRES LAW OFFICES, P.S.C.**
P.O. Box 192938 San Juan, PR 00919-2938
Tel. (787) 767-8244 & Fax (787) 767-1183

***/s/ Sarah M. Vega Bonilla***
By: Sarah M. Vega Bonilla
USDC-PR 303503
Email: svega@martineztorreslaw.com

**Exhibit I**

## LOST PROMISSORY NOTE AFFIDAVIT

I, Joanne M Jackson, do hereby swear and/or affirm

1   I am the President of RKL Financial Corporation, formerly known as SLM Financial Corporation

2   I provide this Lost Note Affidavit related to the following loan

Loan Number _____

Mortgage Date  November 13, 2002 _____

Note Date  November 13, 2002_____

Principal Amount of the Note  $272,000 00 _____

Name of Borrower(s)  Ric F Malik & Karen S Malik _____

(hereinafter "Note", "Mortgage", and/or "loan")

3   I have and examined the files of RKL Financial Corporation and the Promissory Note in this matter, which is at this time and was at the time it was lost, owned and held by RKL

4   I have also conferred with other employees of RKL Financial Corporation, whom are responsible for maintaining the loan records of RKL, including promissory notes, and they have likewise confirmed and agree that the Note in this matter has been lost

5   RKL Financial Corporation's records indicate that a Mortgage (and other loan agreements), signed at the same time as the Promissory Note, is located within our files and records, and further confirmed that as of the date the Promissory Note and Mortgage (and other loan agreements) were signed, that we owned and held all rights, title and interest to the Note and Mortgage

6   After a thorough and diligent search, made at the time RKL Financial Corporation is transferring and assigning its rights under the Note and the Mortgage to a new holder, RKL Financial has not been able to locate the original note and therefore said Note is lost

7   The loss of possession was not the result of a transfer or a lawful seizure, and the RKL Financial cannot reasonably obtain or regain possession of the Note instrument, because the Note instrument was lost, and its whereabouts cannot be determined

8   Pursuant to N J S A section 12A 3-309 (a) RKL Financial hereby states that it is
assigning to the new holder all rights title and ownership under the Note,
notwithstanding the loss of the original Note

9   From the time of origination and up until the time the Note was lost, RKL was in
possession of the Note, and was entitled to enforce the Note, including all rights,
title and interests established by and under the Note

10  The purpose of this Affidavit is to establish that the new holder of rights to this
loan, whom shall now have the right to enforce all rights title and interest under
the Note (and the Mortgage and related loan agreements) pursuant to New Jersey
law, including N J S A §12A 3-309

11  I execute this Lost Note Affidavit, contemporaneous to the execution of an
assignment of the Mortgage and/or transfer of the loan related to the Note

12  In so doing, I affirm that I am familiar with the business records maintained by
RKL Financial, and I certify that this Lost Note Affidavit shall constitute a
business record pursuant to N J R Evid 803(c)(6)

I understand that if any of the above is willfully false, I may be subject to
punishment

RKL Financial Corporation

Joanne M Jackson Miosi
President

Dated 4/16/19

Sworn and subscribed before me
this 16 day of April 20 19

Notary public
State of New Jersey

KIM A CHEW
Notary Public
State of Delaware
My Commission Expires on Jul 24, 2019

# ALLONGE TO NOTE

**LOAN NUMBER**

**BORROWER NAME(S)**          RIC F  MALIK

                             KAREN S  MALIK

**PROPERTY ADDRESS**          327 DELAWARE AVENUE

                             DELANCO TOWNSHIP, NJ 80750000

**NOTE DATE**                11/13/2002

**LOAN AMOUNT**              $272,000 00

**PAY TO THE ORDER OF**

**WITHOUT RECOURSE ON THIS  15th  DAY OF  MAY 2019**

RKL Financial Corporation f/k/a SLM Financial Corporation

BY _____

Joanne M  Jackson Miosi

President

Task ID

**Exhibit II**

MOD/AGREE
BOOK#12233     PAGE#634
DATE:06/21/2010
RECORDED: M PERRY
TIMOTHY D TYLER, COUNTY CLERK

LIS PENDENS FORECLOSURE
DATE OF FILING:11/115/2011
COMPLAINTS:SLM FINANCIAL CORP
1st DEFENDANT NAMED:RIC F MALIK
SEE COURT FILE#484795
LIS PENDENS BK#478     PG#151
RECORDER: M.PERRY
TIMOTHY D TYLER, COUNTY CLERK

RECORD & RETURN TO:
FREEDOM TITLE & ABSTRACT
1010 LAUREL OAK CORPORATE CT
SUITE 406
VOORHEES, NJ 08043

—————————— [Space Above This Line For Recording Data] ——————————

# MORTGAGE

THIS MORTGAGE ("Security Instrument") is given on ..........NOVEMBER 13, 2002........... . The mortgagor is ...RIC F. MALIK & KAREN S. MALIK, HUSBAND AND WIFE.......................................................
....................................................................................................................................................
("Borrower"). This Security Instrument is given to .....SLM Financial Corporation.............................
........................................................... , which is organized and existing under the laws of .............................
.....New Jersey........................... , and whose principal office and mailing address is .................................
P.O. Box 545...........................................Berlin, NJ 08009............... ("Lender"). Borrower owes Lender the principal sum of ..Two hundred seventy two thousand & no/100.................................
............................................. Dollars (U.S. $..272,000.00...............). This debt is evidenced by Borrower's note dated the same date as this Security Instrument ("Note"), which provides for monthly payments, with the full debt, if not paid earlier, due and payable on ....NOVEMBER 18, 2032...... This Security Instrument secures to Lender: (a) the repayment of the debt evidenced by the Note, with interest, and all renewals, extensions and modifications of the Note; (b) the payment of all other sums, with interest, advanced under paragraph 7 to protect the security of this Security Instrument; and (c) the performance of Borrower's covenants and agreements under this Security Instrument and the Note. This Security Instrument and the Note secured hereby are subject to modification (including changes in the interest rate, the due date, and other terms and conditions), as defined in New Jersey Laws 1985, ch. 353, § 1 *et seq.*, and upon such modification, shall have the benefit of the lien priority provisions of that law. The maximum principal amount secured by this Security Instrument is $ .272,000.00............... . For these purposes, Borrower does hereby mortgage, grant and convey to Lender the following described property located in ....BURLINGTON........................... County, New Jersey:

SEE ATTACHED EXHIBIT 'A'

ARRIVED
-- 0 2002
BURLINGTON COUNTY CLERK

RECEIVED
2002 NOV 21 A 11:54
BURLINGTON CNTY CLERK

which has the address of ..........................................................., DELANCO TOWNSHIP...............,
                                                    [Street]                                      [City]

New Jersey ...08750000........ ("Property Address");
                [Zip Code]

Form 3031  9/90

**NEW JERSEY** - Single Family - Fannie Mae/Freddie Mac **UNIFORM INSTRUMENT**

Bankers Systems, Inc., St. Cloud, MN  Form MD-1-NJ  9/18/97                    (page 1 of 6) ————— ———

TOGETHER WITH all the improvements now or hereafter erected on the property, and all easements, appurtenances, and fixtures now or hereafter a part of the property. All replacements and additions shall also be covered by this Security Instrument. All of the foregoing is referred to in this Security Instrument as the "Property."

BORROWER COVENANTS that Borrower is lawfully seised of the estate hereby conveyed and has the right to mortgage, grant and convey the Property and that the Property is unencumbered, except for encumbrances of record. Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record.

THIS SECURITY INSTRUMENT combines uniform covenants for national use and non-uniform covenants with limited variations by jurisdiction to constitute a uniform security instrument covering real property.

UNIFORM COVENANTS. Borrower and Lender covenant and agree as follows:

**1. Payment of Principal and Interest; Prepayment and Late Charges.** Borrower shall promptly pay when due the principal of and interest on the debt evidenced by the Note and any prepayment and late charges due under the Note.

**2. Funds for Taxes and Insurance.** Subject to applicable law or to a written waiver by Lender, Borrower shall pay to Lender on the day monthly payments are due under the Note, until the Note is paid in full, a sum ("Funds") for: (a) yearly taxes and assessments which may attain priority over this Security Instrument as a lien on the Property; (b) yearly leasehold payments or ground rents on the Property, if any; (c) yearly hazard or property insurance premiums; (d) yearly flood insurance premiums, if any; (e) yearly mortgage insurance premiums, if any; and (f) any sums payable by Borrower to Lender, in accordance with the provisions of paragraph 8, in lieu of the payment of mortgage insurance premiums. These items are called "Escrow Items." Lender may, at any time, collect and hold Funds in an amount not to exceed the maximum amount a lender for a federally related mortgage loan may require for Borrower's escrow account under the federal Real Estate Settlement Procedures Act of 1974 as amended from time to time, 12 U.S.C. § 2601 *et seq.* ("RESPA"), unless another law that applies to the Funds sets a lesser amount. If so, Lender may, at any time, collect and hold Funds in an amount not to exceed the lesser amount. Lender may estimate the amount of Funds due on the basis of current data and reasonable estimates of expenditures of future Escrow Items or otherwise in accordance with applicable law.

The Funds shall be held in an institution whose deposits are insured by a federal agency, instrumentality, or entity (including Lender, if Lender is such an institution) or in any Federal Home Loan Bank. Lender shall apply the Funds to pay the Escrow Items. Lender may not charge Borrower for holding and applying the Funds, annually analyzing the escrow account, or verifying the Escrow Items, unless Lender pays Borrower interest on the Funds and applicable law permits Lender to make such a charge. However, Lender may require Borrower to pay a one-time charge for an independent real estate tax reporting service used by Lender in connection with this loan, unless applicable law provides otherwise. Unless an agreement is made or applicable law requires interest to be paid, Lender shall not be required to pay Borrower any interest or earnings on the Funds. Borrower and Lender may agree in writing, however, that interest shall be paid on the Funds. Lender shall give to Borrower, without charge, an annual accounting of the Funds, showing credits and debits to the Funds and the purpose for which each debit to the Funds was made. The Funds are pledged as additional security for all sums secured by this Security Instrument.

If the Funds held by Lender exceed the amounts permitted to be held by applicable law, Lender shall account to Borrower for the excess Funds in accordance with the requirements of applicable law. If the amount of the Funds held by Lender at any time is not sufficient to pay the Escrow Items when due, Lender may so notify Borrower in writing, and, in such case Borrower shall pay to Lender the amount necessary to make up the deficiency. Borrower shall make up the deficiency in no more than twelve monthly payments, at Lender's sole discretion.

Upon payment in full of all sums secured by this Security Instrument, Lender shall promptly refund to Borrower any Funds held by Lender. If, under paragraph 21, Lender shall acquire or sell the Property, Lender, prior to the acquisition or sale of the Property, shall apply any Funds held by Lender at the time of acquisition or sale as a credit against the sums secured by this Security Instrument.

**3. Application of Payments.** Unless applicable law provides otherwise, all payments received by Lender under paragraphs 1 and 2 shall be applied: first, to any prepayment charges due under the Note; second, to amounts payable under paragraph 2; third, to interest due; fourth, to principal due; and last, to any late charges due under the Note.

**4. Charges; Liens.** Borrower shall pay all taxes, assessments, charges, fines and impositions attributable to the Property which may attain priority over this Security Instrument, and leasehold payments or ground rents, if any. Borrower shall pay these obligations in the manner provided in paragraph 2, or if not paid in that manner, Borrower shall pay them on time directly to the person owed payment. Borrower shall promptly furnish to Lender all notices of amounts to be paid under this paragraph. If Borrower makes these payments directly, Borrower shall promptly furnish to Lender receipts evidencing the payments.

Borrower shall promptly discharge any lien which has priority over this Security Instrument unless Borrower: (a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender; (b) contests in good faith the lien by, or defends against enforcement of the lien in, legal proceedings which in the Lender's opinion operate to prevent the enforcement of the lien; or (c) secures from the holder of the lien an agreement satisfactory to Lender subordinating the lien to this Security Instrument. If Lender determines that any part of the Property is subject to a lien which may attain priority over this Security Instrument, Lender may give Borrower a notice identifying the lien. Borrower shall satisfy the lien or take one or more of the actions set forth above within 10 days of the giving of notice.

**Form 3031  9/90**

**5. Hazard or Property Insurance.** Borrower shall keep the improvements now existing or hereafter erected on the Property insured against loss by fire, hazards included within the term "extended coverage" and any other hazards, including floods or flooding, for which Lender requires insurance. This insurance shall be maintained in the amounts and for the periods that Lender requires. The insurance carrier providing the insurance shall be chosen by Borrower subject to Lender's approval which shall not be unreasonably withheld. If Borrower fails to maintain coverage described above, Lender may, at Lender's option, obtain coverage to protect Lender's rights in the Property in accordance with paragraph 7.

All insurance policies and renewals shall be acceptable to Lender and shall include a standard mortgage clause. Lender shall have the right to hold the policies and renewals. If Lender requires, Borrower shall promptly give to Lender all receipts of paid premiums and renewal notices. In the event of loss, Borrower shall give prompt notice to the insurance carrier and Lender. Lender may make proof of loss if not made promptly by Borrower.

Unless Lender and Borrower otherwise agree in writing, insurance proceeds shall be applied to restoration or repair of the Property damaged, if the restoration or repair is economically feasible and Lender's security is not lessened. If the restoration or repair is not economically feasible or Lender's security would be lessened, the insurance proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with any excess paid to Borrower. If Borrower abandons the Property, or does not answer within 30 days a notice from Lender that the insurance carrier has offered to settle a claim, then Lender may collect the insurance proceeds. Lender may use the proceeds to repair or restore the Property or to pay sums secured by this Security Instrument, whether or not then due. The 30-day period will begin when the notice is given.

Unless Lender and Borrower otherwise agree in writing, any application of proceeds to principal shall not extend or postpone the due date of the monthly payments referred to in paragraphs 1 and 2 or change the amount of the payments. If under paragraph 21 the Property is acquired by Lender, Borrower's right to any insurance policies and proceeds resulting from damage to the Property prior to the acquisition shall pass to Lender to the extent of the sums secured by this Security Instrument immediately prior to the acquisition.

**6. Occupancy, Preservation, Maintenance and Protection of the Property; Borrower's Loan Application; Leaseholds.** Borrower shall occupy, establish, and use the Property as Borrower's principal residence within sixty days after the execution of this Security Instrument and shall continue to occupy the Property as Borrower's principal residence for at least one year after the date of occupancy, unless Lender otherwise agrees in writing, which consent shall not be unreasonably withheld, or unless extenuating circumstances exist which are beyond Borrower's control. Borrower shall not destroy, damage or impair the Property, allow the Property to deteriorate, or commit waste on the Property. Borrower shall be in default if any forfeiture action or proceeding, whether civil or criminal, is begun that in Lender's good faith judgment could result in forfeiture of the Property or otherwise materially impair the lien created by this Security Instrument or Lender's security interest. Borrower may cure such a default and reinstate, as provided in paragraph 18, by causing the action or proceeding to be dismissed with a ruling that, in Lender's good faith determination, precludes forfeiture of the Borrower's interest in the Property or other material impairment of the lien created by this Security Instrument or Lender's security interest. Borrower shall also be in default if Borrower, during the loan application process, gave materially false or inaccurate information or statements to Lender (or failed to provide Lender with any material information) in connection with the loan evidenced by the Note, including, but not limited to, representations concerning Borrower's occupancy of the Property as a principal residence. If this Security Instrument is on a leasehold, Borrower shall comply with all the provisions of the lease. If Borrower acquires fee title to the Property, the leasehold and the fee title shall not merge unless Lender agrees to the merger in writing.

**7. Protection of Lender's Rights in the Property.** If Borrower fails to perform the covenants and agreements contained in this Security Instrument, or there is a legal proceeding that may significantly affect Lender's rights in the Property (such as a proceeding in bankruptcy, probate, for condemnation or forfeiture or to enforce laws or regulations), then Lender may do and pay for whatever is necessary to protect the value of the Property and Lender's rights in the Property. Lender's actions may include paying any sums secured by a lien which has priority over this Security Instrument, appearing in court, paying reasonable attorneys' fees and entering on the Property to make repairs. Although Lender may take action under this paragraph 7, Lender does not have to do so.

Any amounts disbursed by Lender under this paragraph 7 shall become additional debt of Borrower secured by this Security Instrument. Unless Borrower and Lender agree to other terms of payment, these amounts shall bear interest from the date of disbursement at the Note rate and shall be payable, with interest, upon notice from Lender to Borrower requesting payment.

**8. Mortgage Insurance.** If Lender required mortgage insurance as a condition of making the loan secured by this Security Instrument, Borrower shall pay the premiums required to maintain the mortgage insurance in effect. If, for any reason, the mortgage insurance coverage required by Lender lapses or ceases to be in effect, Borrower shall pay the premiums required to obtain coverage substantially equivalent to the mortgage insurance previously in effect, at a cost substantially equivalent to the cost to Borrower of the mortgage insurance previously in effect, from an alternate mortgage insurer approved by Lender. If substantially equivalent mortgage insurance coverage is not available, Borrower shall pay to Lender each month a sum equal to one-twelfth of the yearly mortgage insurance premium being paid by Borrower when the insurance coverage lapsed or ceased to be in effect. Lender will accept, use and retain these payments as a loss reserve in lieu of mortgage insurance. Loss reserve payments may no longer be required, at the option of Lender, if mortgage

**Form 3031  9/90**

MB8740 PG129

insurance coverage (in the amount and for the period that Lender requires) provided by an insurer approved by Lender again becomes available and is obtained. Borrower shall pay the premiums required to maintain mortgage insurance in effect, or to provide a loss reserve, until the requirement for mortgage insurance ends in accordance with any written agreement between Borrower and Lender or applicable law.

**9. Inspection.** Lender or its agent may make reasonable entries upon and inspections of the Property. Lender shall give Borrower notice at the time of or prior to an inspection specifying reasonable cause for the inspection.

**10. Condemnation.** The proceeds of any award or claim for damages, direct or consequential, in connection with any condemnation or other taking of any part of the Property, or for conveyance in lieu of condemnation, are hereby assigned and shall be paid to Lender.

In the event of a total taking of the Property, the proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with any excess paid to Borrower. In the event of a partial taking of the Property in which the fair market value of the Property immediately before the taking is equal to or greater than the amount of the sums secured by this Security Instrument immediately before the taking, unless Borrower and Lender otherwise agree in writing, the sums secured by this Security Instrument shall be reduced by the amount of the proceeds multiplied by the following fraction: (a) the total amount of the sums secured immediately before the taking, divided by (b) the fair market value of the Property immediately before the taking. Any balance shall be paid to Borrower. In the event of a partial taking of the Property in which the fair market value of the Property immediately before the taking is less than the amount of the sums secured immediately before the taking, unless Borrower and Lender otherwise agree in writing or unless applicable law otherwise provides, the proceeds shall be applied to the sums secured by this Security Instrument whether or not the sums are then due.

If the Property is abandoned by Borrower, or if, after notice by Lender to Borrower that the condemnor offers to make an award or settle a claim for damages, Borrower fails to respond to Lender within 30 days after the date the notice is given, Lender is authorized to collect and apply the proceeds, at its option, either to restoration or repair of the Property or to the sums secured by this Security Instrument, whether or not then due.

Unless Lender and Borrower otherwise agree in writing, any application of proceeds to principal shall not extend or postpone the due date of the monthly payments referred to in paragraphs 1 and 2 or change the amount of such payments.

**11. Borrower Not Released; Forbearance By Lender Not a Waiver.** Extension of the time for payment or modification of amortization of the sums secured by this Security Instrument granted by Lender to any successor in interest of Borrower shall not operate to release the liability of the original Borrower or Borrower's successors in interest. Lender shall not be required to commence proceedings against any successor in interest or refuse to extend time for payment or otherwise modify amortization of the sums secured by this Security Instrument by reason of any demand made by the original Borrower or Borrower's successors in interest. Any forbearance by Lender in exercising any right or remedy shall not be a waiver of or preclude the exercise of any right or remedy.

**12. Successors and Assigns Bound; Joint and Several Liability; Co-signers.** The covenants and agreements of this Security Instrument shall bind and benefit the successors and assigns of Lender and Borrower, subject to the provisions of paragraph 17. Borrower's covenants and agreements shall be joint and several. Any Borrower who co-signs this Security Instrument but does not execute the Note: (a) is co-signing this Security Instrument only to mortgage, grant and convey that Borrower's interest in the Property under the terms of this Security Instrument; (b) is not personally obligated to pay the sums secured by this Security Instrument; and (c) agrees that Lender and any other Borrower may agree to extend, modify, forbear or make any accommodations with regard to the terms of this Security Instrument or the Note without that Borrower's consent.

**13. Loan Charges.** If the loan secured by this Security Instrument is subject to a law which sets maximum loan charges, and that law is finally interpreted so that the interest or other loan charges collected or to be collected in connection with the loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from Borrower which exceeded permitted limits will be refunded to Borrower. Lender may choose to make this refund by reducing the principal owed under the Note or by making a direct payment to Borrower. If a refund reduces principal, the reduction will be treated as a partial prepayment without any prepayment charge under the Note.

**14. Notices.** Any notice to Borrower provided for in this Security Instrument shall be given by delivering it or by mailing it by first class mail unless applicable law requires use of another method. The notice shall be directed to the Property Address or any other address Borrower designates by notice to Lender. Any notice to Lender shall be given by first class mail to Lender's address stated herein or any other address Lender designates by notice to Borrower. Any notice provided for in this Security Instrument shall be deemed to have been given to Borrower or Lender when given as provided in this paragraph.

**15. Governing Law; Severability.** This Security Instrument shall be governed by federal law and the law of the jurisdiction in which the Property is located. In the event that any provision or clause of this Security Instrument or the Note conflicts with applicable law, such conflict shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision. To this end the provisions of this Security Instrument and the Note are declared to be severable.

**Form 3031 9/90**

MB8740 PG130

**16. Borrower's Copy.** Borrower shall be given one conformed copy of the Note and of this Security Instrument.

**17. Transfer of the Property or a Beneficial Interest in Borrower.** If all or any part of the Property or any interest in it is sold or transferred (or if a beneficial interest in Borrower is sold or transferred and Borrower is not a natural person) without Lender's prior written consent, Lender may, at its option, require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if exercise is prohibited by federal law as of the date of this Security Instrument.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is delivered or mailed within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

**18. Borrower's Right to Reinstate.** If Borrower meets certain conditions, Borrower shall have the right to have enforcement of this Security Instrument discontinued at any time prior to the earlier of: (a) 5 days (or such other period as applicable law may specify for reinstatement) before sale of the Property pursuant to any power of sale contained in this Security Instrument; or (b) entry of a judgment enforcing this Security Instrument. Those conditions are that Borrower: (a) pays Lender all sums which then would be due under this Security Instrument and the Note as if no acceleration had occurred; (b) cures any default of any other covenants or agreements; (c) pays all expenses incurred in enforcing this Security Instrument, including, but not limited to, reasonable attorneys' fees; and (d) takes such action as Lender may reasonably require to assure that the lien of this Security Instrument, Lender's rights in the Property and Borrower's obligation to pay the sums secured by this Security Instrument shall continue unchanged. Upon reinstatement by Borrower, this Security Instrument and the obligations secured hereby shall remain fully effective as if no acceleration had occurred. However, this right to reinstate shall not apply in the case of acceleration under paragraph 17.

**19. Sale of Note; Change of Loan Servicer.** The Note or a partial interest in the Note (together with this Security Instrument) may be sold one or more times without prior notice to Borrower. A sale may result in a change in the entity (known as the "Loan Servicer") that collects monthly payments due under the Note and this Security Instrument. There also may be one or more changes of the Loan Servicer unrelated to a sale of the Note. If there is a change of the Loan Servicer, Borrower will be given written notice of the change in accordance with paragraph 14 above and applicable law. The notice will state the name and address of the new Loan Servicer and the address to which payments should be made. The notice will also contain any other information required by applicable law.

**20. Hazardous Substances.** Borrower shall not cause or permit the presence, use, disposal, storage, or release of any Hazardous Substances on or in the Property. Borrower shall not do, nor allow anyone else to do, anything affecting the Property that is in violation of any Environmental Law. The preceding two sentences shall not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized to be appropriate to normal residential uses and to maintenance of the Property.

Borrower shall promptly give Lender written notice of any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which Borrower has actual knowledge. If Borrower learns, or is notified by any governmental or regulatory authority, that any removal or other remediation of any Hazardous Substance affecting the Property is necessary, Borrower shall promptly take all necessary remedial actions in accordance with Environmental Law.

As used in this paragraph 20, "Hazardous Substances" are those substances defined as toxic or hazardous substances by Environmental Law and the following substances: gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials. As used in this paragraph 20, "Environmental Law" means federal laws and laws of the jurisdiction where the Property is located that relate to health, safety or environmental protection.

NON-UNIFORM COVENANTS. Borrower and Lender further covenant and agree as follows:

**21. Acceleration; Remedies. Lender shall give notice to Borrower prior to acceleration following Borrower's breach of any covenant or agreement in this Security Instrument (but not prior to acceleration under paragraph 17 unless applicable law provides otherwise). The notice shall specify: (a) the default; (b) the action required to cure the default; (c) a date, not less than 30 days from the date the notice is given to Borrower, by which the default must be cured; and (d) that failure to cure the default on or before the date specified in the notice may result in acceleration of the sums secured by this Security Instrument, foreclosure by judicial proceeding and sale of the Property. The notice shall further inform Borrower of the right to reinstate after acceleration and the right to assert in the foreclosure proceeding the non-existence of a default or any other defense of Borrower to acceleration and foreclosure. If the default is not cured on or before the date specified in the notice, Lender at its option may require immediate payment in full of all sums secured by this Security Instrument without further demand and may foreclose this Security Instrument by judicial proceeding. Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this paragraph 21, including, but not limited to, attorneys' fees and costs of title evidence permitted by Rules of Court.**

**22. Release.** Upon payment of all sums secured by this Security Instrument, Lender shall cancel this Security Instrument without charge to Borrower. Borrower shall pay any recordation costs.

**Form 3031  9/90**

MB8740 PG131

**23. No Claim of Credit for Taxes.** Borrower will not make deduction from or claim credit on the principal or interest secured by this Security Instrument by reason of any governmental taxes, assessments or charges. Borrower will not claim any deduction from the taxable value of the Property by reason of this Security Instrument.

**24. Riders to this Security Instrument.** If one or more riders are executed by Borrower and recorded together with this Security Instrument, the covenants and agreements of each such rider shall be incorporated into and shall amend and supplement the covenants and agreements of this Security Instrument as if the rider(s) were a part of this Security Instrument. [Check applicable box(es)]

☐ Adjustable Rate Rider     ☐ Condominium Rider     ☒ 1-4 Family Rider
☐ Graduated Payment Rider     ☐ Planned Unit Development Rider     ☐ Biweekly Payment Rider
☐ Balloon Rider     ☐ Rate Improvement Rider     ☐ Second Home Rider
☐ Other(s) [specify]

By SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Security Instrument and in any rider(s) executed by Borrower and recorded with it.

Signed, sealed and delivered in the presence of:

................................................     ................................................................ (Seal)
Kathleen Della Polla             **RIC F. MALIK**             -Borrower

................................................................ (Seal)
**KAREN S. MALIK**             -Borrower

———————————————— [Space Below This Line For Acknowledgment] ————————————————

STATE OF NEW JERSEY, ....Camden.... County ss:
On this ....NOVEMBER 13.... day of ....2,100 2....
.........., before me, the subscriber, personally appeared ....Ric F Malik +....
....Karen F Malik.... who, I am satisfied, ..I.S....
the person(s) named in and who executed the within instrument, and thereupon ....they....
.................... acknowledged that ....the i r.... signed, sealed and delivered the same as
.................... act and deed, for the purposes therein expressed.

................................................
Notary Public

**KATHLEEN DELLA POLLA**
**NOTARY PUBLIC OF NEW JERSEY**
**Commission Expires 4/30/2003**

**COMMITMENT**
**SCHEDULE C**

File No:

ALL THAT CERTAIN lot, piece or parcel of land, with the buildings and improvements thereon erected, situate, lying and being in the Township of Delanco, County of Burlington and State of New Jersey, as follows:

TRACT #1:
BEGINNING at a point in the division line of Lots 3.04 & 4, in the Northwesterly line of Second Street (50 feet wide), distant 150.00 feet from the intersection of the Northwesterly line of Second Street and the Southwesterly line of Cedar Street (50 feet wide), and running; thence

(1) Along the Northwesterly line of Second Street, South 19 degrees 10 minutes 00 seconds West, 34.96 feet to a monument in the division line of Lots 4 & 5; thence

(2) Along the line of Lot 5, North 56 degrees 50 minutes 00 seconds West, 198.49 feet to a point; thence

(3) Along same, North 89 degrees 25 minutes 00 seconds West, 12.52 feet to a point; thence

(4) Along same, North 53 degrees 00 minutes 00 seconds West, 98.88 feet to a rebar in the Southeasterly line of Delaware Avenue; thence

(5) Along same, North 37 degrees 00 minutes 00 seconds East, 47.07 feet to a point in the division line of Lots 3.01 & 4; thence

(6) Along the line of Lots 3.01 & 3.04, South 53 degrees 00 minutes 00 seconds East, 250.00 feet to a point; thence

(7) Along the line of Lots 3.04, South 61 degrees 29 minutes 03 seconds East, 46.81 feet to the point and place of BEGINNING.

TRACT #2:
BEGINNING at a rebar in the division line of Lots 3.02 & 4, in the Northwesterly line of Delaware Avenue (50 feet wide), distant on the following three courses from the intersection of the Northwesterly line of Second Street (50 feet wide) and the Southwesterly line of Cedar Street (50 feet wide), and running; thence

(a) Along the Northwesterly line of Second Street, South 19 degrees 10 minutes 00 seconds West, 150.00 feet to a point in the division line of Lots 3.04 & 4; thence

(b) Along the line of Lots 3.04, North 61 degrees 29 minutes 33 seconds West, 46.81 feet to a point; thence

(c) North 53 degrees 00 minutes 00 seconds West, 300.00 feet to the point and place of BEGINNING; thence

(1) Along the Northwesterly line of Delaware Avenue, South 37 degrees 00 minutes 00 seconds West, 47.07 feet to a pipe in the division line of Lots 4 & 5; thence

(2) Along the line of Lot 5, North 53 degrees 00 minutes 00 seconds West, 84.44 feet to a point in the high water mark of the Delaware River; thence

(3) Along said high water mark, Northeastwardly the distance be what it may; thence

MB8740 PGI 33

(4) South 53 degrees 00 minutes 00 seconds East, 83.72 feet to the point and place of BEGINNING.

BEING known as Block 1208, Lot 4, on the Tax Map.

BEING commonly known as 327 Delaware Avenue.



Unofficial Document

MB8740 PG134

# 1-4 FAMILY RIDER
## Assignment of Rents

THIS 1-4 FAMILY RIDER is made this ..13th........... day of ..NOVEMBER..........2002...,
and is incorporated into and shall be deemed to amend and supplement the Mortgage, Deed of
Trust or Security Deed (the "Security Instrument") of the same date given by the undersigned (the
"Borrower") to secure Borrower's Note to .SLM.Financial.Corporation...........................
.................................................................................................................................
(the "Lender") of the same date and covering the Property described in the Security Instrument
and located at: .327.DELAWARE.AVENUE....DELANCO.TOWNSNJP.8075-0000..................... .

[Property Address]

**1-4 FAMILY COVENANTS.** In addition to the covenants and agreements made in the Security
Instrument, Borrower and Lender further covenant and agree as follows:

**A. ADDITIONAL PROPERTY SUBJECT TO THE SECURITY INSTRUMENT.** In
addition to the property described in the Security Instrument, the following items are added to the
Property description, and shall also constitute the Property covered by the Security Instrument:
building materials, appliances and goods of every nature whatsoever now or hereafter located in,
on, or used, or intended to be used in connection with the Property, including, but not limited to,
those for the purposes of supplying or distributing heating, cooling, electricity, gas, water, air and
light, fire prevention and extinguishing apparatus, security and access control apparatus,
plumbing, bath tubs, water heaters, water closets, sinks, ranges, stoves, refrigerators,
dishwashers, disposals, washers, dryers, awnings, storm windows, storm doors, screens, blinds,
shades, curtains and curtain rods, attached mirrors, cabinets, panelling and attached floor
coverings now or hereafter attached to the Property, all of which, including replacements and
additions thereto, shall be deemed to be and remain a part of the Property covered by the Security
Instrument. All of the foregoing together with the Property described in the Security Instrument
(or the leasehold estate if the Security Instrument is on a leasehold) are referred to in this 1-4
Family Rider and the Security Instrument as the "Property."

**B. USE OF PROPERTY; COMPLIANCE WITH LAW.** Borrower shall not seek, agree to or
make a change in the use of the Property or its zoning classification, unless Lender has agreed in
writing to the change. Borrower shall comply with all laws, ordinances, regulations and
requirements of any governmental body applicable to the Property.

**C. SUBORDINATE LIENS.** Except as permitted by federal law, Borrower shall not allow any
lien inferior to the Security Instrument to be perfected against the Property without Lender's prior
written permission.

**D. RENT LOSS INSURANCE.** Borrower shall maintain insurance against rent loss in addition
to the other hazards for which insurance is required by Uniform Covenant 5.

**E. "BORROWER'S RIGHT TO REINSTATE" DELETED.** Uniform Covenant 18 is deleted.

**F. BORROWER'S OCCUPANCY.** Unless Lender and Borrower otherwise agree in writing,
the first sentence in Uniform Covenant 6 concerning Borrower's occupancy of the Property is
deleted. All remaining covenants and agreements set forth in Uniform Covenant 6 shall remain in
effect.

**G. ASSIGNMENT OF LEASES.** Upon Lender's request, Borrower shall assign to Lender all
leases of the Property and all security deposits made in connection with leases of the Property.
Upon the assignment, Lender shall have the right to modify, extend or terminate the existing
leases and to execute new leases, in Lender's sole discretion. As used in this paragraph G, the
word "lease" shall mean "sublease" if the Security Instrument is on a leasehold.

Form 3170 9/90

MULTISTATE 1-4 FAMILY RIDER—Fannie Mae/Freddie Mac Uniform Instrument

Bankers Systems, Inc., St. Cloud, MN  Form 1-4 FAM-R 3/19/98          *(page 1 of 2)* _____    _____

**H. ASSIGNMENT OF RENTS; APPOINTMENT OF RECEIVER; LENDER IN POSSESSION.** Borrower absolutely and unconditionally assigns and transfers to Lender all the rents and revenues ("Rents") of the Property, regardless of to whom the Rents of the Property are payable. Borrower authorizes Lender or Lender's agents to collect the Rents, and agrees that each tenant of the Property shall pay the Rents to Lender or Lender's agents. However, Borrower shall receive the Rents until (i) Lender has given Borrower notice of default pursuant to paragraph 21 of the Security Instrument and (ii) Lender has given notice to the tenant(s) that the Rents are to be paid to Lender or Lender's agent. This assignment of Rents constitutes an absolute assignment and not an assignment for additional security only.

If Lender gives notice of breach to Borrower: (i) all Rents received by Borrower shall be held by Borrower as trustee for the benefit of Lender only, to be applied to the sums secured by the Security Instrument; (ii) Lender shall be entitled to collect and receive all of the Rents of the Property; (iii) Borrower agrees that each tenant of the Property shall pay all Rents due and unpaid to Lender or Lender's agents upon Lender's written demand to the tenant; (iv) unless applicable law provides otherwise, all Rents collected by Lender or Lender's agents shall be applied first to the costs of taking control of and managing the Property and collecting the Rents, including, but not limited to, attorney's fees, receiver's fees, premiums on receiver's bonds, repair and maintenance costs, insurance premiums, taxes, assessments and other charges on the Property, and then to the sums secured by the Security Instrument; (v) Lender, Lender's agents or any judicially appointed receiver shall be liable to account for only those Rents actually received; and (vi) Lender shall be entitled to have a receiver appointed to take possession of and manage the Property and collect the Rents and profits derived from the Property without any showing as to the inadequacy of the Property as security.

If the Rents of the Property are not sufficient to cover the costs of taking control of and managing the Property and of collecting the Rents, any funds expended by Lender for such purposes shall become indebtedness of Borrower to Lender secured by the Security Instrument pursuant to Uniform Covenant 7.

Borrower represents and warrants that Borrower has not executed any prior assignment of the Rents and has not and will not perform any act that would prevent Lender from exercising its rights under this paragraph.

Lender, or Lender's agents or a judicially appointed receiver, shall not be required to enter upon, take control of or maintain the Property before or after giving notice of default to Borrower. However, Lender, or Lender's agents or a judicially appointed receiver, may do so at any time when a default occurs. Any application of Rents shall not cure or waive any default or invalidate any other right or remedy of Lender. This assignment of Rents of the Property shall terminate when all the sums secured by the Security Instrument are paid in full.

**I. CROSS-DEFAULT PROVISION.** Borrower's default or breach under any note or agreement in which Lender has an interest shall be a breach under the Security Instrument and Lender may invoke any of the remedies permitted by the Security Instrument.

BY SIGNING BELOW, Borrower accepts and agrees to the terms and provisions contained in this 1-4 Family Rider.

...................................................................... (Seal)
RIC F. MALIK                                        -Borrower

...................................................................... (Seal)
KAREN S. MALIK                                      -Borrower

**Form 3170  9/90**
*(page 2 of 2)*

Bankers Systems, Inc., St. Cloud, MN Form 1-4 FAM-R 3/19/98

# RECORDING INFORMATION SHEET

50 RANCOCAS RD,
MT. HOLLY, NJ 08060

INSTRUMENT NUMBER:

## 5479689

DOCUMENT TYPE:

## ASSIGNMENT OF MORTGAGE

**Official Use Only**

JOANNE SCHWARTZ
BURLINGTON COUNTY

RECEIPT NUMBER
8599885
RECORDED ON
August  20, 2019 11:43 AM

INSTRUMENT NUMBER
5479689

## BOOK: OR13403
## PAGE: 2117

| Document Charge Type | ASSIGNMENT OF MORTGAGE | |
|---|---|---|
| **Return Address** *(for recorded documents)* LLC SIMPLIFILE 4844 NORTH 300 WEST PROVO  UT  84604 | | |
| **No. Of Pages** *(Excluding Recording Information and/or Summary Sheet)* | | 1 |
| **Consideration Amount** | | $0.00 |
| **Recording Fee** | | $40.00 |
| **Realty Transfer Fee** | | $0.00 |
| **Total Amount Paid** | | $40.00 |
| **Municipality** | UNKNOWN | |
| **Parcel Information** | **Block:**  N/A  **Lot:**  N/A | |
| **First Party Name** | RKL FIN CORP | |
| **Second Party Name** | US BANK TR | |

**Additional Information (Official Use Only)**

Ctrl Id: 5756632 Recording Clerk: bscelza

****************************** *DO NOT REMOVE THIS PAGE.*******************************
*COVER SHEET (DOCUMENT SUMMARY FORM) IS PART OF BURLINGTON COUNTY FILING RECORD*
******************** *RETAIN THIS PAGE FOR FUTURE REFERENCE.*********************

**Book # OR 13403 Page # 2117 Inst. # 5479689**

## Burlington County Document Summary Sheet

| | Transaction Identification Number | |
|---|---|---|

BURLINGTON COUNTY CLERK

50 RANCOCAS RD

MOUNT HOLLY NJ 08060 1317

**Recorded Document to be Returned by Submitter to:**

MERIDIAN ASSET SERVICES - API

3201 34TH ST S STE 310

ST PETERSBURG, FL 33711

| **Official Use Only** | | |
|---|---|---|
| | **Submission Date** *(mm/dd/yyyy)* | 08/14/2019 |
| | **No. of Pages** *(excluding Summary Sheet)* | 1 |
| | **Recording Fee** *(excluding transfer tax)* | $40.00 |
| | **Realty Transfer Tax** | $0.00 |
| | **Total Amount** | $40.00 |
| | **Document Type**   ASSIGNMENT OF MORTGAGE | |
| | **Electronic Recordation Level**   L2 - Level 2 (With Images) | |
| | **Municipal Codes** | |
| | BURLINGTON COUNTY | 99 |

**Additional Information (Official Use Only)**

*\* DO NOT REMOVE THIS PAGE.*
*COVER SHEET [DOCUMENT SUMMARY FORM] IS PART OF BURLINGTON COUNTY FILING RECORD.*
*RETAIN THIS PAGE FOR FUTURE REFERENCE.*

**Book # OR 13403 Page # 2117 Inst. # 5479689**

## Burlington County Document Summary Sheet

| | | |
|---|---|---|
| | **Type** | ASSIGNMENT OF MORTGAGE |
| | **Consideration** | |
| | **Submitted By** | SIMPLIFILE, LLC. (SIMPLIFILE) |
| | **Document Date** | 06/21/2019 |

| | **Reference Info** | | | | |
|---|---|---|---|---|---|
| | **Book ID** | **Book** | **Beginning Page** | **Instrument No.** | **Recorded/File Date** |
| | | 8740 | 127 | | |

**ASSIGNMENT OF MORTGAGE**

| ASSIGNOR | Name | Address |
|---|---|---|
| | RIC F MALIK | |
| | KAREN S MALIK | |
| | RKL FINANCIAL CORPORATION | |
| | SLM FINANCIAL CORPORATION | |

| ASSIGNEE | Name | Address |
|---|---|---|
| | US BANK TRUST NATIONAL ASSOCIATION | |
| | CVI CGS MORTGAGE LOAN TRUST I | |

| **Parcel Info** | | | | | |
|---|---|---|---|---|---|
| **Property Type** | **Tax Dist.** | **Block** | **Lot** | **Qualifier** | **Municipality** |
| | | | | | |

*\* DO NOT REMOVE THIS PAGE.*
*COVER SHEET [DOCUMENT SUMMARY FORM] IS PART OF BURLINGTON COUNTY FILING RECORD.*
*RETAIN THIS PAGE FOR FUTURE REFERENCE.*

Book # OR 13403 Page # 2117 Inst. # 5479689

## ASSIGNMENT OF MORTGAGE

FOR VALUE RECEIVED, RKL FINANCIAL CORPORATION f/k/a SLM FINANCIAL CORPORATION, organized and existing under the laws of Delaware, its successors and assigns, at **123 S. Justison Street, Wilmington, DE 19801** hereby assigns and transfers to **U.S. BANK TRUST, NATIONAL ASSOCIATION, AS TRUSTEE OF CVI CGS MORTGAGE LOAN TRUST I**, at 300 Delaware Ave, 9th Floor, Wilmington, Delaware 19801 all its right, title and interest in and to a certain mortgage executed by RIC F. MALIK to SLM Financial Corporation bearing the date of 11/13/2002 and recorded 11/21/2002 in Burlington **County** Registry of Deeds, **State** of NJ in **Book** 8740 **Page** 127 *& Karen S. Malik*

*Municipality: Township of Delanco*

Signed on the 21st **day** of June **2019**

RKL FINANCIAL CORPORATION f/k/a SLM FINANCIAL CORPORATION

_Joanne M. Jackson Miosi, President_

State of **Delaware**          )

County of **New Castle**     ) ss:

On this 21st day of June 2019 before me, a Notary Public, personally appeared Joanne M. Jackson Miosi known to me to be the President, and that said instrument was signed on behalf of said corporation.

_, Notary Public_

JUDITH C. BEAMER
Notary Public
State of Delaware
My Commission Expires on Aug 3, 2019

Task ID:

| RECORDING INFORMATION SHEET | | 50 RANCOCAS RD, MT. HOLLY, NJ 08060 |
|---|---|---|

| INSTRUMENT NUMBER: 5829409 | DOCUMENT TYPE: ASSIGNMENT OF MORTGAGE |
|---|---|

**Official Use Only**

| Document Charge Type | ASSIGNMENT OF MORTGAGE |
|---|---|

**Return Address** *(for recorded documents)*
LLC SIMPLIFILE
4844 NORTH 300 WEST
PROVO UT 84604

JOANNE SCHWARTZ
BURLINGTON COUNTY

RECEIPT NUMBER
8961957
RECORDED ON
May 12, 2023 9:46 AM

INSTRUMENT NUMBER
5829409

**BOOK: OR13670**
**PAGE: 1636**

| No. Of Pages *(Excluding Recording Information and/or Summary Sheet)* | 2 |
|---|---|
| Consideration Amount | $0.00 |
| Recording Fee | $50.00 |
| Realty Transfer Fee | $0.00 |
| Total Amount Paid | $50.00 |
| Municipality | DELANCO TWP |
| Parcel Information | Block: N/A Lot: N/A |
| First Party Name | US BANK TR |
| Second Party Name | MCLP ASSET CO INC |

**Additional Information (Official Use Only)**

Ctrl Id: 6207763 Recording Clerk: kathy

***************************** *DO NOT REMOVE THIS PAGE.* *****************************
*COVER SHEET (DOCUMENT SUMMARY FORM) IS PART OF BURLINGTON COUNTY FILING RECORD*
******************** *RETAIN THIS PAGE FOR FUTURE REFERENCE.* ********************



## Burlington County Document Summary Sheet

| Transaction Identification Number | |
|---|---|

**BURLINGTON COUNTY CLERK**

50 RANCOCAS RD

MOUNT HOLLY NJ 08060 1317

**Recorded Document to be Returned by Submitter to:**

MERIDIAN ASSET SERVICES - API

3201 34TH ST S STE 310

ST PETERSBURG, FL 33711

| Official Use Only | | |
|---|---|---|
| | **Submission Date** *(mm/dd/yyyy)* | 05/10/2023 |
| | **No. of Pages** *(excluding Summary Sheet)* | 2 |
| | **Recording Fee** *(excluding transfer tax)* | $50.00 |
| | **Realty Transfer Tax** | $0.00 |
| | **Total Amount** | $50.00 |
| | **Document Type** ASSIGNMENT OF MORTGAGE | |
| | **Electronic Recordation Level** L2 - Level 2 (With Images) | |
| | **Municipal Codes** DELANCO TWP | 9 |

### Additional Information (Official Use Only)

***DO NOT REMOVE THIS PAGE.***
***COVER SHEET [DOCUMENT SUMMARY FORM] IS PART OF BURLINGTON COUNTY FILING RECORD.***
***RETAIN THIS PAGE FOR FUTURE REFERENCE.***

Book # OR 13670 Page # 1636 Inst. # 5829409

## Burlington County Document Summary Sheet

| ASSIGNMENT OF MORTGAGE | Type | ASSIGNMENT OF MORTGAGE | | | | |
|---|---|---|---|---|---|---|
| | Consideration | | | | | |
| | Submitted By | SIMPLIFILE, LLC. (SIMPLIFILE) | | | | |
| | Document Date | 05/03/2023 | | | | |
| | Reference Info | | | | | |
| | **Book ID** | **Book** | **Beginning Page** | **Instrument No.** | **Recorded/File Date** | |
| | | 8740 | 127 | 00 | | |

| ASSIGNOR | **Name** | **Address** |
|---|---|---|
| | US BANK TRUST NATIONAL ASSOCIATION | |
| | CVI CGS MORTGAGE LOAN TRUST I | |
| | RIC F MALIK | |
| | KAREN S MALIK | |
| | MERIDIAN ASSET SERVICES LLC AIF | |

| ASSIGNEE | **Name** | **Address** |
|---|---|---|
| | MCLP ASSET COMPANY INC | |

**Parcel Info**

| **Property Type** | **Tax Dist.** | **Block** | **Lot** | **Qualifier** | **Municipality** |
|---|---|---|---|---|---|
| | 9 | N/A | N/A | | 9 |

*** DO NOT REMOVE THIS PAGE.**
*COVER SHEET [DOCUMENT SUMMARY FORM] IS PART OF BURLINGTON COUNTY FILING RECORD.*
*RETAIN THIS PAGE FOR FUTURE REFERENCE.*

Prepared By and Return To:

Collateral Department
Meridian Asset Services, LLC
3201 34th Street South, Suite 310
St. Petersburg, FL 33711
(239) 351-2442

_____                _____   Space above for Recorder's use  _____
Loan No:

## ASSIGNMENT OF MORTGAGE

FOR GOOD AND VALUABLE CONSIDERATION, the sufficiency of which is hereby acknowledged, the undersigned, **U.S. BANK TRUST NATIONAL ASSOCIATION, AS TRUSTEE OF CVI CGS MORTGAGE LOAN TRUST I**, whose address is **1011 CENTRE RD, EX-DE-WD2D, WILMINGTON, DE 19805**, (ASSIGNOR), does hereby grant, assign and transfer to **MCLP ASSET COMPANY, INC.**, whose address is **2001 ROSS AVENUE SUITE 2800, DALLAS, TEXAS 75201**, (ASSIGNEE), its successors, transferees and assigns forever, all beneficial interest under that certain mortgage, together with the certain note(s) described therein with all interest, all liens, and any rights due or to become due thereon.

Date of Mortgage: **11/13/2002**
Original Loan Amount: **$272,000.00**
Executed by (Borrower(s)): **RIC F. MALIK & KAREN S. MALIK**
Original Lender: **SLM FINANCIAL CORPORATION**
Filed of Record: In Mortgage Book/Liber/Volume **M 8740**, Page 127
Document/Instrument No: **N/A** in the Recording District of **Burlington, NJ**, Recorded on **12/12/2002**.
**MUNICIPALITY: TOWNSHIP OF DELANCO**

IN WITNESS WHEREOF, the undersigned by its duly elected officers and pursuant to proper authority of its board of directors has duly executed, sealed, acknowledged and delivered this assignment.

Date: **5/3/2023**

**U.S. BANK TRUST NATIONAL ASSOCIATION, AS TRUSTEE OF CVI CGS MORTGAGE LOAN TRUST I, BY MERIDIAN ASSET SERVICES, LLC, ITS ATTORNEY-IN-FACT**

By: **GENA MOORE**
Title: **VICE PRESIDENT**

Witness Name: **PATRICK NUNN**

Book # OR 13670 Page # 1636 Inst. # 5829409

A NOTARY PUBLIC OR OTHER OFFICER COMPLETING THIS CERTIFICATE VERIFIES ONLY THE IDENTITY OF
THE INDIVIDUAL WHO SIGNED THE DOCUMENT TO WHICH THIS CERTIFICATE IS ATTACHED, AND NOT THE
TRUTHFULNESS, ACCURACY, OR VALIDITY OF THAT DOCUMENT

State of          **FLORIDA**
County of         **PINELLAS**

On **5/3/2023**, before me, **DICHE' BATTLE**, a Notary Public, personally appeared **GENA MOORE, VICE
PRESIDENT** of/for **MERIDIAN ASSET SERVICES, LLC, AS ATTORNEY-IN-FACT FOR U.S. BANK
TRUST NATIONAL ASSOCIATION, AS TRUSTEE OF CVI CGS MORTGAGE LOAN TRUST I**,
personally known to me, or who proved to me on the basis of satisfactory evidence to be the person(s) whose
name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in
his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the
entity upon behalf of which the person(s) acted, executed the instrument. I certify under PENALTY OF PERJURY
under the laws of the State of **FLORIDA** that the foregoing paragraph is true and correct. I further certify the
foregoing instrument was acknowledged before me by means of ☑ physical presence or ☐ online notarization and
that GENA MOORE, signed, sealed, attested and delivered this document as a voluntary act in my presence.

Witness my hand and official seal.

(Notary Name): **DICHE' BATTLE**
My commission expires: **02/13/2027**

DiChe' Battle
Notary Public
State of Florida
Comm#
Expires 2/13/2027

**Exhibit III**

# RECORDING DATA PAGE

FREEDOM TITLE & ABSTRACT CO
1010 LAUREL OAK CORP CENTER
SUITE 406
VOORHEES, NJ  08043


Receipt No    : 388037
Document No   : 3736260   Type : MTG
Recording Date : 12/12/2002
Login id      : ccgeogha


     Recorded
  Dec 12 2002 10:06am
Burlington County Clerk

Return> to exit this program when finished.

Unofficial Document

Clerk of Burlington County • 49 Rancocas Rd. • Mt. Holly, NJ 08060
609-265-5180

MB8740 PG137

**Exhibit IV**

## ITEMIZED STATEMENT OF ARREARAGE

| | |
|---|---|
| **Debtor:** | **RIC F MALIK** |
| **Bankruptcy Case Number:** | **23-03241-ESL7** |
| **Property Address:** | **327 DELAWARE AVENUE, DELANCO TOWNSHIP, NJ 08075** |
| Payoff as of 04/02/2024 | $215,474.19 |
| Principal Balance as of 04/02/2024 | $167,691.15 |
| Post-Petition Payments in Arrears | From: 10/18/2023 – 03/18/2024 |
| Number of Payments in arrears (post) | |
| Monthly Payment Amount | $1,242.16 |
| Subtotal of Post-Petition Payments in arrears | $7,452.96 |
| (Less Suspense) | ($0.00) |
| Total of Post-Petition Installments in arrears | $7,452.96 |
| + Total Corp Adv/Late/NSF/Atty Fees: | $41,244.22 |
| + Escrow Required: | $1,526.15 |
| **TOTAL AMOUNT OF ARREARAGE** | **$50,223.33** |

Signature

April 18, 2024

Date

Signed by: Kateryna Halfwassen

Printed Name

Title: Bankruptcy Case Manager I

Movant's Representative



MONDAY - FRIDAY:     8AM - 9PM ET
SATURDAY:     10AM - 2PM ET

PHONE NUMBER:     (800) 365-7107
FAX NUMBER:     (866) 467-1187

April 02, 2024

MALIK, RIC F.
327 DELAWARE AVENUE

DELANCO, NJ  08075

Payoff figures have been requested on the loan for the borrower and property described below.

Loan ID:
RIC F. MALIK
KAREN S. MALIK
327 DELAWARE AVENUE
DELANCO TOWNSHIP, NJ    08075
Loan Type: Conventional

When remitting funds, please use our loan number to ensure proper posting and provide us with the borrower's forwarding address.  Funds received in this office after 3:00 pm Eastern Time will be processed on the next business day, with interest charged to that date.

This payoff quote is effective  4/2/2024  and is good through   4/2/2024 . Any transactions that occur on or after the effective date may change the payoff amount.

| **Projected Payoff Date** | **4/2/2024** |
|---|---|
| Principal Balance | $167,691.15 |
| Interest To 4/2/2024 | $4,495.93 |
| Fees | $41,244.22 |
| Prepayment Penalty | $0.00 |
| Release Fees | $0.00 |
| Funds owed by borrower | $2,042.89 |
| Funds owed to borrower | $0.00 |
| | |
| **Total Payoff** | **$215,474.19** |
| Per diem | $22.52 |

The next payment due date is 10/18/2023. Payments are made by Billing on a Monthly basis. The interest rate for this payment is 5.00000% and the P & I payment is 1,242.16.

**PLEASE CALL THE NUMBER LISTED ON THIS FORM TO UPDATE FIGURES PRIOR TO REMITTING FUNDS AS THEY ARE SUBJECT TO CHANGE WITHOUT NOTICE.**

<u>Mailing Address</u>
Shellpoint Mortgage Servicing
75 Beattie Place
Suite LL202
Greenville, SC 29601

4/2/2024



PHONE NUMBER:     (800) 365-7107
FAX NUMBER:     (866) 467-1187

Payoff Policy Details:

1.  When remitting funds, please use our loan number to ensure proper posting and provide us with the borrower's forwarding address .
2.  We only accept funds on business days, which are Monday through Friday . Any funds received will be posted with the date received .
3.  Continue making your monthly payments until you send us the amount needed to pay off your mortgage to avoid late charges or adverse credit reporting .
    a.  If you currently have your monthly payment set up on automatic withdrawal (ACH), or have any pending payments set up, drafting will continue until the loan is paid in full, at which time future drafts will automatically be cancelled .
4.  **If you are due for a refund,** that refund will be issued by check on day 20 after the date the loan is paid in full .
    a.  Any refunds will be sent to the mailing address we have on record for this account . If your mailing address is changing, you must contact us to provide a new address .
5.  The payoff total quoted above is valid through the stated good through date . Any transactions that occur on or after the issue date of this payoff statement may change the total payoff amount .
6.  The payoff amount is subject to our final verification once we receive the payoff funds . We reserve the right, except where prohibited, to correct any portion of this statement at any time .
7.  **If the amount we receive is insufficient to pay off this loan, we may use funds in the escrow balance to cover the short payoff .**
    a.  **If the escrow balance is insufficient to pay off the total amount owed, we will attempt to contact you or the issuing agent. If we are unable reach you or the issuing agent, we will return the payoff funds and you will need to request a new quote .**
8.  We will pay all escrowed items, including hazard and flood insurance and taxes, from your escrow account as normally scheduled up to the date we receive the payoff funds .
    a.  You or your closing agent (if applicable) will need to request a refund from the appropriate tax authority or insurance company for any duplicate tax or insurance payments .
    b.  Any existing lender-placed property insurance premium will be cancelled upon account payoff, and any related unearned premiums will be refunded .
9.  Once the loan is paid in full, the appropriate security instrument will be released as follows :
    a.  Real Property: a Release is recorded with your county and a copy will be sent to you once returned from the county, usually within 30-90 days, dependent upon state/county processing times .
    b.  Personal Property: a Tile Lien Cancellation or UCC3 Termination will be sent to the mailing address we have on record for this account within 30-90 days .

**IMPORTANT: Update Your Mailing Address for Tax Documentation**
*"To ensure timely delivery of your tax documents related to your mortgage, please verify, and update your mailing address in your online account. To do so, sign into your account at myaccount.Shellpointmtg.com and go to your dashboard. Then, click on the "down" arrow beside your profile icon and select My Profile. Here you can update your address and phone number. We encourage you to update your personal information whenever anything changes."*

4/2/2024



MONDAY - FRIDAY:      8AM - 9PM ET
SATURDAY:    10AM - 2PM ET

PHONE NUMBER:     (800) 365-7107
FAX NUMBER:     (866) 467-1187

Wiring Instructions - *** You must include the "Reference" information listed below if wiring funds ***

Bank Name:               CITI Bank
ABA Number:
Account Number:
Account Name:        Shellpoint Mortgage Servicing
Reference:

**"BEWARE OF SCAMS - WE WILL NEVER ASK YOU TO USE DIFFERENT WIRING INSTRUCTIONS - IF YOU RECEIVE ANY REQUEST TO USE INSTRUCTIONS DIFFERENT THAN THESE PLEASE CALL THE TELEPHONE NUMBER LISTED AT THE TOP THIS FORM TO CONFIRM NEXT STEPS ."**

**RIC F. MALIK  -  Loan ID #**

## FEE DETAILS

| Description | Amount |
|---|---|
| Prior Servicer Cost | $41,190.22 |
| Property Inspection | $54.00 |
| | **$41,244.22** |

## FUNDS OWED BY BORROWER DETAILS

| Description | Amount |
|---|---|
| Lender Placed Hazard Due | $516.74 |
| Escrow Only Payment | $1,526.15 |
| | **$2,042.89** |

4/2/2024

Reinstatement Balance 3392

## LOAN DETAILS

|  |  |
|---|---|
| LoanID: |  |
| Due Date: | 10/18/2023 |
| Current Principal Balance: | $167,691.15 |
| Escrow Balance: | ($1,526.15) |
| Unapplied Balance: | $0.00 |
| Late Charge Balance: | $0.00 |
| NSF Fee Balance: | $0.00 |
| Legal Fee Balance: | $0.00 |
| Accrual Balance: | $3,677.00 |
| Other Fees Balance: | $41,244.22 |
| Figure Good Thru Date: | 4/2/2024 |

## BORROWER INFO

|  |  |
|---|---|
| Primary Borrower Name: | MALIK, RIC F. |
| Co Borrower Name: | MALIK, KAREN S. |

## REINSTATEMENT FIGURES

|  |  |
|---|---|
| Total PITI Payments Due: | $7,452.96 |
| Default Interest Due: |  |
| Total Corp Adv/Late/NSF/Atty Fees: | $41,244.22 |
| Unapplied Balance: | $0.00 |
| Escrow Required: | $1,526.15 |
| Outstanding FC Fees & Costs: | $0.00 |
| **Total Reinstatement Figure*:** | **$50,223.33** |

*(Total PITI + Fees + Unapplied + Escrow Required + FC Fees & Costs)

The account may not be funded for the coming year

## PAYMENTS DUE DETAIL

| Due Date | Interest Rate | Prin & Int Pmt | Escrow Pmt | Total Payment | Principal Amount | Interest Amount | Principal Bal |
|---|---|---|---|---|---|---|---|
| 10/18/2023 | 5.000% | $1,242.16 | $0.00 | $1,242.16 | $543.45 | $698.71 | $167,147.70 |
| 11/18/2023 | 5.000% | $1,242.16 | $0.00 | $1,242.16 | $545.71 | $696.45 | $166,601.99 |
| 12/18/2023 | 5.000% | $1,242.16 | $0.00 | $1,242.16 | $547.98 | $694.18 | $166,054.01 |
| 1/18/2024 | 5.000% | $1,242.16 | $0.00 | $1,242.16 | $550.27 | $691.89 | $165,503.74 |
| 2/18/2024 | 5.000% | $1,242.16 | $0.00 | $1,242.16 | $552.56 | $689.60 | $164,951.18 |
| 3/18/2024 | 5.000% | $1,242.16 | $0.00 | $1,242.16 | $554.86 | $687.30 | $164,396.32 |
|  |  | Total Payments Due: | $7,452.96 | | Count: | 6 | |

**Please add any outstanding foreclosure fees and costs to this reinstatement



**Exhibit V**

Department of Defense Manpower Data Center

Results as of : Apr-18-2024 10:36:29 AM

SCRA 5.19



## Status Report
## Pursuant to Servicemembers Civil Relief Act

| | |
|---|---|
| SSN: | XXX-XX-1283 |
| Birth Date: | |
| Last Name: | MALIK |
| First Name: | RIC |
| Middle Name: | F |
| Status As Of: | Apr-18-2024 |
| Certificate ID: | J79RR3P66JYZ3LB |

| On Active Duty On Active Duty Status Date | | | |
|---|---|---|---|
| Active Duty Start Date | Active Duty End Date | Status | Service Component |
| NA | NA | No | NA |
| This response reflects the individuals' active duty status based on the Active Duty Status Date | | | |

| Left Active Duty Within 367 Days of Active Duty Status Date | | | |
|---|---|---|---|
| Active Duty Start Date | Active Duty End Date | Status | Service Component |
| NA | NA | No | NA |
| This response reflects where the individual left active duty status within 367 days preceding the Active Duty Status Date | | | |

| The Member or His/Her Unit Was Notified of a Future Call-Up to Active Duty on Active Duty Status Date | | | |
|---|---|---|---|
| Order Notification Start Date | Order Notification End Date | Status | Service Component |
| NA | NA | No | NA |
| This response reflects whether the individual or his/her unit has received early notification to report for active duty | | | |

Upon searching the data banks of the Department of Defense Manpower Data Center, based on the information that you provided, the above is the status of the individual on the active duty status date as to all branches of the Uniformed Services (Army, Navy, Marine Corps, Air Force, Space Force, NOAA, Public Health, and Coast Guard). This status includes information on a Servicemember or his/her unit receiving notification of future orders to report for Active Duty.

*Sam Yousefzadeh*

Sam Yousefzadeh, Director
Department of Defense - Manpower Data Center
4800 Mark Center Drive, Suite 04E25
Alexandria, VA 22350

24-003002-1283-Alias

The Defense Manpower Data Center (DMDC) is an organization of the Department of Defense (DoD) that maintains the Defense Enrollment and Eligibility Reporting System (DEERS) database which is the official source of data on eligibility for military medical care and other eligibility systems.

The DoD strongly supports the enforcement of the Servicemembers Civil Relief Act (50 USC App. § 3901 et seq, as amended) (SCRA) (formerly known as the Soldiers' and Sailors' Civil Relief Act of 1940). DMDC has issued hundreds of thousands of "does not possess any information indicating that the individual is currently on active duty" responses, and has experienced only a small error rate. In the event the individual referenced above, or any family member, friend, or representative asserts in any manner that the individual was on active duty for the active duty status date, or is otherwise entitled to the protections of the SCRA, you are strongly encouraged to obtain further verification of the person's status by contacting that person's Service. Service contact information can be found on the SCRA website's FAQ page (Q35) via this URL: https://scra.dmdc.osd.mil/scra/#/faqs. If you have evidence the person was on active duty for the active duty status date and you fail to obtain this additional Service verification, punitive provisions of the SCRA may be invoked against you. See 50 USC App. § 3921(c).

This response reflects the following information:  (1) The individual's Active Duty status on the Active Duty Status Date (2) Whether the individual left Active Duty status within 367 days  preceding the Active Duty Status Date (3) Whether the individual or his/her unit received early notification to report for active duty on the Active Duty Status Date.

## More information on "Active Duty Status"

Active duty status as reported in this certificate is defined in accordance with 10 USC § 101(d) (1).  Prior to 2010 only some of the active duty periods less than 30 consecutive days in length were available.  In the case of a member of the National Guard, this includes service under a call to active service authorized by the President or the Secretary of Defense under 32 USC § 502(f) for purposes of responding to a national emergency declared by the President and supported by Federal funds.  All Active Guard Reserve (AGR) members must be assigned against an authorized mobilization position in the unit they support.  This includes Navy Training and Administration of the Reserves (TARs), Marine Corps Active Reserve (ARs) and Coast Guard Reserve Program Administrator (RPAs).  Active Duty status also applies to a Uniformed Service member who is an active duty commissioned officer of the U.S. Public Health Service or the National Oceanic and Atmospheric Administration (NOAA Commissioned Corps).

## Coverage Under the SCRA is Broader in Some Cases

Coverage under the SCRA is broader in some cases and includes some categories of persons on active duty for purposes of the SCRA who would not be reported as on Active Duty under this certificate.  SCRA protections are for Title 10 and Title 14 active duty records for all the Uniformed Services periods. Title 32 periods of Active Duty are not covered by SCRA, as defined in accordance with 10 USC § 101(d)(1).

Many times orders are amended to extend the period of active duty, which would extend SCRA protections. Persons seeking to rely on this website certification should check to make sure the orders on which SCRA protections are based have not been amended to extend the inclusive dates of service. Furthermore, some protections of the SCRA may extend to persons who have received orders to report for active duty or to be inducted, but who have not actually begun active duty or actually reported for induction.  The Last Date on Active Duty entry is important because a number of protections of the SCRA extend beyond the last dates of active duty.

Those who could rely on this certificate are urged to seek qualified legal counsel to ensure that all rights guaranteed to Service members under the SCRA are protected

WARNING:  This certificate was provided based on a last name, SSN/date of birth, and active duty status date provided by the requester.  Providing erroneous information will cause an erroneous certificate to be provided.

24-003002-1283-Alias

Department of Defense Manpower Data Center



**Status Report**
Pursuant to Servicemembers Civil Relief Act

SSN:            XXX-XX-4115
Birth Date:
Last Name:      MALIK
First Name:     KAREN
Middle Name:    S
Status As Of:   Apr-18-2024
Certificate ID: 3S6TYZ6KB3KKYCB

| On Active Duty On Active Duty Status Date | | | |
|---|---|---|---|
| Active Duty Start Date | Active Duty End Date | Status | Service Component |
| NA | NA | No | NA |
| This response reflects the individuals' active duty status based on the Active Duty Status Date | | | |

| Left Active Duty Within 367 Days of Active Duty Status Date | | | |
|---|---|---|---|
| Active Duty Start Date | Active Duty End Date | Status | Service Component |
| NA | NA | No | NA |
| This response reflects where the individual left active duty status within 367 days preceding the Active Duty Status Date | | | |

| The Member or His/Her Unit Was Notified of a Future Call-Up to Active Duty on Active Duty Status Date | | | |
|---|---|---|---|
| Order Notification Start Date | Order Notification End Date | Status | Service Component |
| NA | NA | No | NA |
| This response reflects whether the individual or his/her unit has received early notification to report for active duty | | | |

Upon searching the data banks of the Department of Defense Manpower Data Center, based on the information that you provided, the above is the status of the individual on the active duty status date as to all branches of the Uniformed Services (Army, Navy, Marine Corps, Air Force, Space Force, NOAA, Public Health, and Coast Guard). This status includes information on a Servicemember or his/her unit receiving notification of future orders to report for Active Duty.

*Sam Yousefzadeh*

Sam Yousefzadeh, Director
Department of Defense - Manpower Data Center
4800 Mark Center Drive, Suite 04E25
Alexandria, VA 22350

24-003002-4115-Alias

The Defense Manpower Data Center (DMDC) is an organization of the Department of Defense (DoD) that maintains the Defense Enrollment and Eligibility Reporting System (DEERS) database which is the official source of data on eligibility for military medical care and other eligibility systems.

The DoD strongly supports the enforcement of the Servicemembers Civil Relief Act (50 USC App. § 3901 et seq, as amended) (SCRA) (formerly known as the Soldiers' and Sailors' Civil Relief Act of 1940). DMDC has issued hundreds of thousands of "does not possess any information indicating that the individual is currently on active duty" responses, and has experienced only a small error rate. In the event the individual referenced above, or any family member, friend, or representative asserts in any manner that the individual was on active duty for the active duty status date, or is otherwise entitled to the protections of the SCRA, you are strongly encouraged to obtain further verification of the person's status by contacting that person's Service. Service contact information can be found on the SCRA website's FAQ page (Q35) via this URL: https://scra.dmdc.osd.mil/scra/#/faqs. If you have evidence the person was on active duty for the active duty status date and you fail to obtain this additional Service verification, punitive provisions of the SCRA may be invoked against you. See 50 USC App. § 3921(c).

This response reflects the following information:  (1) The individual's Active Duty status on the Active Duty Status Date (2) Whether the individual left Active Duty status within 367 days  preceding the Active Duty Status Date (3) Whether the individual or his/her unit received early notification to report for active duty on the Active Duty Status Date.

## More information on "Active Duty Status"

Active duty status as reported in this certificate is defined in accordance with 10 USC § 101(d) (1).  Prior to 2010 only some of the active duty periods less than 30 consecutive days in length were available.  In the case of a member of the National Guard, this includes service under a call to active service authorized by the President or the Secretary of Defense under 32 USC § 502(f) for purposes of responding to a national emergency declared by the President and supported by Federal funds.  All Active Guard Reserve (AGR) members must be assigned against an authorized mobilization position in the unit they support.  This includes Navy Training and Administration of the Reserves (TARs), Marine Corps Active Reserve (ARs) and Coast Guard Reserve Program Administrator (RPAs).  Active Duty status also applies to a Uniformed Service member who is an active duty commissioned officer of the U.S. Public Health Service or the National Oceanic and Atmospheric Administration (NOAA Commissioned Corps).

## Coverage Under the SCRA is Broader in Some Cases

Coverage under the SCRA is broader in some cases and includes some categories of persons on active duty for purposes of the SCRA who would not be reported as on Active Duty under this certificate.  SCRA protections are for Title 10 and Title 14 active duty records for all the Uniformed Services periods. Title 32 periods of Active Duty are not covered by SCRA, as defined in accordance with 10 USC § 101(d)(1).

Many times orders are amended to extend the period of active duty, which would extend SCRA protections. Persons seeking to rely on this website certification should check to make sure the orders on which SCRA protections are based have not been amended to extend the inclusive dates of service. Furthermore, some protections of the SCRA may extend to persons who have received orders to report for active duty or to be inducted, but who have not actually begun active duty or actually reported for induction.  The Last Date on Active Duty entry is important because a number of protections of the SCRA extend beyond the last dates of active duty.

Those who could rely on this certificate are urged to seek qualified legal counsel to ensure that all rights guaranteed to Service members under the SCRA are protected

WARNING:  This certificate was provided based on a last name, SSN/date of birth, and active duty status date provided by the requester.  Providing erroneous information will cause an erroneous certificate to be provided.

24-003002-4115-Alias